PUREX CORPORATION, LTD. (Assignee of Manhattan Soap Company, Inc.), Appellant,

v.

MARYLAND PAPER PRODUCTS CO., Appellee.

Patent Appeal No. 6596.

United States Court of Customs and Patent Appeals.

Feb. 21, 1961.

James M. Naylor, Naylor & Neal, San Francisco, Cal. (James Atkins and Russell Law, Washington, D. C., of counsel), for appellant.

Albert J. Kramer, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

This appeal was taken from the Assistant Commissioner's dismissal (121 U.S. P.Q. 611) of appellant-opposer's opposition to appellee-applicant's application for registration of the trade-mark "Sweetheart."[1]

Each party uses the word "Sweetheart," as its trademark. Opposer's predecessor had used and registered the mark for toilet soap many years before applicant used it on any of the various paper products which it sells.

Applicant took no testimony but gave notice under rule 2.123(c), 15 U.S.C.A. Appendix that it would rely upon its registrations of the mark "Sweetheart" as official records of the Patent Office as follows:

(1) Trademark Registration No. 377,958 for drinking straws,

(2) Trademark Registration No. 379,130 for cellulose ribbons,

(3) Trademark Registration No. 437,193 for paper cups,

(4) Trademark Registration No. 647,868 for matches,

(5) Trademark Registration No. 652,696 for paper spoons and forks,

(6) Trademark Registration No. 654,599 for paper food containers and plates.

The notice further states, "The purpose of these registrations is to show the rights of applicant and a related company in the use of the name Sweetheart in connection with various paper products."

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 United States Code.

The record here does not show any objection was made by opposer to any of the foregoing registrations.

The issues which require determination are:

(1) Has opposer as the prior user and registrant of the mark "Sweetheart" for toilet soap lost its right to oppose the registration of the same mark by applicant on the goods specified in the application here in issue?

(2) Is there likelihood of confusion, mistake or deception of purchasers as to source or origin of applicant's goods as specified in the application for registration where the mark "Sweetheart" is applied thereto?

It is applicant's position that since opposer has not previously challenged applicant's right to use the mark "Sweetheart" on the goods specified in the registrations referred to in the notice under rule 2.123(c) it is guilty of laches and for this reason cannot maintain the present opposition as it would not be "equitable" at this time to prohibit registration of the mark on what applicant asserts to be the related paper products specified in the application here in issue. In asserting this position applicant invokes section 19 of the Lanham Act (15 U.S.C. § 1069, 15 U.S.C.A. § 1069) that "In all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied."

Delay, as one of the elements of laches, must be an inexcusable delay. United States v. Alex Dussel Iron Works, Inc., 5 Cir., 1929, 31 F.2d 535, 536; Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690, 693. The fact that opposer elected not to oppose the prior registrations does not constitute such an "inexcusable delay."

1. Ser. No. 691,493 filed July 18, 1955. The amended application asserts adoption and use of the mark by applicant on paper towels, paper napkins, paper toilet tissue, paper facial tissue, waxed paper, wrapping paper for frozen foods, rolls of paper for business machines and paper bags in class 37, Paper and Stationery.

■ Registration of the mark "Sweetheart" by applicant as its trademark on drinking straws, cups, spoons, forks, plates, food containers, matches and cellulose ribbons, does not per se place a duty upon opposer to take legal action on peril of losing its exclusive rights to its mark on toilet soap and products related thereto.

On the issue of likelihood of confusion, mistake or purchaser deception, the examiner, relying on the decision of this court in Lever Brothers Co. v. Sitroux Co., 109 F.2d 445, 27 CCPA 858, and on the decision of the Commissioner in Lever Brothers Co. v. Fort Howard Paper Co., 91 U.S.P.Q. 341, held there was a likelihood of confusion, mistake or deception and sustained the opposition. The Assistant Commissioner reversed the examiner after distinguishing these cases on the basis they did not involve "an ordinary English word in everyday usage in describing people and things."

■ We do not find this to be a tenable distinction. It is true that none of the marks in issue in those cases, i. e. "Lux," "Sit-Ru-Lux" and "Paperlux" was "an ordinary English word in everyday usage in describing people and things," but this is not the determinative test of whether or not a word may become a trademark.

The mark "Sweetheart" here in issue is a proper trademark when applied to the goods of the respective parties. While it is a "common English word," it has had various meanings and connotations,[2] none of which constitutes either a common or generic name for the goods on which it is used by opposer and applicant. It is not a designation descriptive of the goods or of their quality, ingredients, properties or functions. Its use on the goods here in issue is both arbitrary and distinctive. As such, it is as much a trademark for the goods to which it has been applied as were the marks involved in the Lever Brothers cases, supra.

We think there would be likelihood of confusion by a purchaser attributing a common source or origin to the "Sweetheart" toilet soap of opposer's registration and to the "Sweetheart" paper towels, paper toilet tissue, and paper facial tissue of applicant's application. The goods are all purchased by the same class of purchasers and are normally so related that purchase of one of them may well recall the need for the others.

■ In addition to such use association, the record shows that many of the retail stores selling such goods display them for sale in close proximity to each other. This further suggests to the purchaser that the goods are of a related nature and makes for greater convenience of the prospective purchaser in locating and purchasing such items. It seems to us that this fact also enhances the chances of confusion, mistake or deception as to source or origin of the goods. A purchaser passing from one display to an adjoining one and seeing the same mark "Sweetheart" displayed on paper towels, paper facial tissue, toilet soap and paper toilet tissue is more likely to ascribe a common source or origin to all such goods than would be the case if such goods were sold in physically separated departments or sales areas. It seems to us, therefore, that these circumstances indicate that paper toilet tissue, toilet soap, paper towels and paper facial tissue are such closely related goods that confusion, mistake or deception of purchasers as to their source or origin will be likely.

Since we have found confusion, mistake and purchaser deception likely as

---

2. The New English Dictionary on Historical Principles, Oxford at the Clarendon Press, 1888, indicates that the word appeared in 1290 A.D. as two words, "swete heorte," and it was "A term of endearment * * * used chiefly in the vocative." From 1589 to 1796 it was used to mean, "One who is loved illicitly; a paramour." The word has also been applied to jam tarts, burs or thorny sprays and plants bearing them, and a tame rabbit. Finally, the word also is used as a verb meaning "to court."

to some of the goods listed in the application, we reverse the decision appealed from without passing upon whether the use of the "Sweetheart" mark on the other goods listed in the application would be likely to result in such confusion, mistake or deception.

Reversed.