55 CCPA

**The W. E. BASSETT COMPANY, Appellant,**

v.

**The SCHOLL MFG. CO., Inc., Appellee.**

**Patent Appeal No. 7873.**

United States Court of Customs and Patent Appeals.

Jan. 11, 1968.

Hopgood & Calimafde, New York City (Roy C. Hopgood, Paul H. Blaustein, New York City, of counsel), for appellant.

Hill, Sherman, Meroni, Gross & Simpson, Carlton Hill, Max R. Chambers, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board [1] sustaining an opposition brought by The Scholl Mfg. Co., Inc. (Scholl) against the registration of the trademark "CHIRO-PEDIC" for Toenail Clippers, filed by The W. E. Bassett Company (Bassett), asserting use since April 1954.

Scholl is the registrant of KIRO-PEDIC for arch supports,[2] and of KIRO for pads, plasters, and medicated shields for corns, calli, bunions, and other foot troubles and irritations.[3] Scholl also alleged prior use of the mark KIRO-PEDIC for corn and callous files, such use extending over a period of more than thirty years.

The record, consisting of testimony in chief and depositions, shows that Scholl is a large manufacturer of foot comfort remedies and appliances which are sold country-wide in drug stores, variety and department stores, grocery stores, and in a chain of "Dr. Scholl's Foot Comfort Shops." On most of its line of products, Scholl uses the house mark DR. SCHOLL'S, together with a secondary or product mark. Scholl's large line of products, including its KIROPEDIC and KIRO products are displayed in its trade catalogs and extensively advertised in trade publications. Current sales of KIROPEDIC corn and callous files approximate 40,000 packages a year, and sales in the mid-nineteen forties were well in excess of 100,000 packages per year. It is noted that since April 1954 Scholl has marketed a toenail clipper, although under a different mark from those here involved.

The record reveals that Bassett is engaged in the manufacture and sale of fingernail and toenail clippers, some made with a nail file and some without. Since 1954 it has marketed these products under the mark TRIM or marks including TRIM as a component. The term CHIROPEDIC is used either to identify the cutting edge of the toenail clippers and, at times, as an additional means of identifying the clipper itself. Bassett's products, including fingernail and toenail clippers and the TRIM fingernail file are sold worldwide at retail through such outlets as drug stores, variety, grocery, and department stores. These products have been promoted through various national consumer magazines, trade journals, trade shows, and direct mail advertising. In a two-year advertising campaign beginning in about 1954, Bassett expended something in excess of $250,000 in the promotion of its TRIM clippers. It is noted that in addition to using the mark CHIROPEDIC in association with the mark TRIM, Bassett also promotes CHIROPEDIC fingernail clippers through sheets from its catalog directed to a special line of customers.

From the above, it clearly appears that Scholl's use of the marks KIROPEDIC and KIRO is prior to Bassett's use of CHIROPEDIC.

In its disposition of the issues disclosed by the record, the board observed that Bassett's "primary defense" to Scholl's opposition is based on the assertion that Scholl "by its actions during its contacts with applicant since 1954 is now barred by laches from claiming that it could be damaged by applicant's use of the mark 'CHIROPEDIC.'" The board

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. 147 USPQ 499, decided October 11, 1965.

2. Reg. No. 116,369, issued April 24, 1917; re-renewed.

3. Reg. No. 215,226, issued July 13, 1926; renewed.

**1016**

resolved this issue by holding Scholl guilty of laches:

> * * * in that it had knowledge for a period of over some eight years that applicant was claiming rights in "CHIROPEDIC" as a trademark, and failed to take any affirmative action during such time either to protest against or enjoin such use while applicant was continuing to conduct a substantial business under its mark. * * *

However, the board did not feel that finding the existence of laches automatically disposed of the issue:

> Where laches exists, and there are differences between either the mark or the goods of the parties sufficient to create reasonable doubts as to a likelihood of confusion, such doubts will be resolved in favor of the applicant. [Citations omitted.] On the other hand, if a continuing likelihood of confusion or mistake is clearly present the defense of laches is insufficient to overcome an otherwise valid cause of action. * * *

In support of this proposition of law, the board cited Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888); The Williamson-Dickie Manufacturing Co. v. Mann Overall Company, Inc., 141 USPQ 934 (TT&A Bd., 1964); and American Brake Shoe Co. v. R. B. Denison Mfg. Co., 146 USPQ 605 (TT&A Bd., 1965). Applying this principle to the instant case, the board held that:

> * * * there is an obvious and continuing likelihood of confusion when the phonetic and legally equivalent marks "CHIROPEDIC" and "KIROPEDIC" are used on the respective products here involved.

 While we agree with the ultimate result reached by the board, as will hereinafter appear, we are not persuaded that the record supports the board's primary finding that Scholl is guilty of laches.

In the main, Bassett predicates the allegation of laches upon a letter dated December 22, 1954, with an advertisement attached, addressed to Mr. Brons of Scholl and signed by Collins T. Dawson.[4] The purpose of the letter was to solicit Scholl's interest in the purchase of Bassett toenail clippers. In the letter the word "chiropedic" appears twice, in small type and enclosed in quotation marks. In the advertisement the same word appears twice in the same manner, and twice in block letters immediately above a picture of the cutting edge of a clipper.

Scholl's analysis of the advertisement, as set forth in its brief, is amply supported, pointing out the following significant details:

1. The word TRIM is prominently displayed in the largest type * * *, and underneath that word is the legend "trademark."

2. The trademark TRIM appears on the illustrated product itself.

3. The word "chiropedic" appears only in relatively fine type in the descriptive body portion of the advertisement.

4. In the descriptive portion of the advertisement, the word TRIM is repeatedly emphasized and in larger type than the other words.

5. The following legend appears on the advertisement "Because only TRIM has the 'chiropedic' cutting edge!"

6. The advertisement also contains the legend "Its exclusive 'chiropedic' * cutting edge is shaped just the opposite of a fingernail clipper."

7. The asterisk in the above legend refers to the lower left-hand corner of the advertisement where the legend "pat. pending" appears.

8. In the illustration in the lower right-hand portion of the advertisement the word "chiropedic" is not em-

---

4. This letter AX–40, AX–40–1 with advertisement which was attached thereto appears on pages 21–24 of the Bassett brief.

phasized any more than the word "ordinary."

We think that the only reasonable conclusion fairly deducible from these exhibits is that Bassett was offering and selling the product, toenail clippers, under the trademark TRIM and not claiming or asserting trademark use and rights in the term "chiropedic." The fact that the term appeared in quotes was not of itself sufficient to charge Mr. Brons of Scholl with notice of adverse trademark usage. We have examined the other Bassett exhibits and do not find them persuasive of a different conclusion. The advertisement clearly proclaims TRIM as the trademark identifying and distinguishing the toenail clipper with a "chiropedic" cutting edge which "cuts right" while in contradistinction thereto the "ordinary" edge "cuts wrong."

We think that the reasoning applied in In re Walker Process Equipment, Inc., 233 F.2d 329, 43 CCPA 913, is relevant here. The court stated:

Since the word "Proquip" is a trademark, it must necessarily identify and distinguish the goods to which it is applied, and being the most prominent feature of the specimens presented, it is obviously intended to be the principal means of identification. The words "Walker Process Equipment Inc." are therefore clearly unnecessary so far as any trade-mark purpose is concerned, since the goods are sufficiently identified without them by an arbitrary word which would normally be considered to be a trade-mark. *While it may be that two or more distinct trade-marks may be applied simultaneously to the same goods, that is clearly not the usual practice, and where, as here, the most prominent feature of a label is a word which is unquestionably a trade-mark, the natural inference would be that the remaining words on the label are not to be considered a trade-mark.* [Emphasis added.]

In our view, the word "chiropedic" as employed in the advertisements of record and the letter of December 22, 1954 conveys an adjectival connotation denoting a specific quality of the TRIM toenail clipper. The use of the term was therefore descriptive of a particular form of cutting edge. This construction is clearly supported by Mr. Dawson, the author of the letter, with advertisement attached, to Mr. Brons of Scholl. In direct examination, Mr. Dawson was asked why he put quotes on chiropedic in this letter. He replied:

A. Because of the fact that we used it as a descriptive term, as a term of identification for this particular type of clipper which we manufactured in this design.

The witness reiterated on cross-examination that "chiropedic" was used in the advertisement "to describe or indicate the type of cutting edge."

This court stated in Powermatics, Inc. v. Globe Roofing Products Co., Inc., 341 F.2d 127, 52 CCPA 950, that "mere advertising and documentary use of a notation apart from the goods do not constitute technical trademark use." It would seem, therefore, to follow logically that the letter of December 22, 1954 and the advertisements of record would not be sufficient to put Scholl on notice of trademark usage of the term "chiropedic." We are unable to agree with the argument advanced by Bassett that these circumstances imposed upon Scholl a duty to register a complaint or else be charged with inexcusable delay in the assertion of its rights. See Purex Corporation, Ltd., Etc. v. Maryland Paper Products Co., Inc., 287 F.2d 186, 48 CCPA 848.

We are unable to find evidentiary circumstances of record sufficient to foreclose by way of estoppel Scholl's right to maintain its opposition. In fact, the record supports the conclusion that Scholl had knowledge of Bassett's trademark usage of "chiropedic" only a short time before filing notice of opposition. Scholl's advertising director testified that he had been aware of Bassett's use of "CHIROPEDIC" "[j]ust in the last few days." Brons testified that upon seeing the term "chiropedic" in the letter

of 1954 he did not know the meaning or implication of the term in quotes. Mr. Coldiron, Scholl's executive vice-president, who had seen a Bassett display on the West Coast some years previously testified that the only thing he noticed was the mark TRIM and that he was aware of Bassett's trademark usage of the term in issue "within the last month."

We deem it unnecessary to catalog other circumstances of record which but serve to support the conclusion that Scholl acted with reasonable promptness in asserting its opposition to Bassett's trademark use of CHIROPEDIC at the first opportunity. We are, therefore, unable to reconcile the facts of record with the primary determination of the board that Scholl is guilty of laches. This finding obviates the necessity of discussing the principle relied on by the board that where a "continuing likelihood of confusion or mistake is clearly present the defense of laches is insufficient to overcome an otherwise valid cause of action."

 The record supports the finding and conclusion of the board relative to the phonetic and legal equivalence of the marks CHIROPEDIC and KIROPEDIC and that:

> * * * "CHIROPEDIC" toenail clippers are sold through the identical channels of trade and to the same class of purchasers as are opposer's "KIRO-PEDIC" corn and callous files. Further, we cannot ignore the fact that both products are reasonably priced over-the-counter items for the care and treatment of the feet; that some of applicant's toenail clippers have a built-in file; and that applicant sells nail files and opposer sells toenail clippers. Under all these circumstances, we must conclude that there is an indisputable likelihood of confusion or mistake. * * *

We have noted Bassett's argument relative to a lack of confusion or trade mix-up with respect to the identity of the parties relative to their products. It is well settled that it is not incumbent upon an opposer to prove actual confusion. All that the statute requires is that the mark sought to be registered so resembles a previously used mark "as to be *likely,* when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." (15 U.S.C. § 1052(d).) (Emphasis supplied.)

The decision of the board is affirmed.

Affirmed.

WORLEY, C. J., concurs in the result.