MOTHER'S RESTAURANTS
INCORPORATED, Plaintiff,

v.

MOTHER'S BAKERY, INC. and Mother's
Bakery Amherst, Inc., Defendants.

No. Civ–80–202.

United States District Court,
W. D. New York.

Oct. 9, 1980.

Jaeckle, Fleischmann & Mugel, Buffalo, N. Y. (David J. Calverley, Buffalo, N. Y., of counsel), and Gottlieb, Rackman & Reisman, P. C., New York City (George Gottlieb, and David S. Kashman, New York City, of counsel), for plaintiff.

Falk, Siemer, Glick, Tuppen & Maloney, Buffalo, N. Y. (Sheldon B. Benatovich, Buffalo, N. Y., of counsel), and Christel, Bean & Linihan, Buffalo, N. Y. (Edwin T. Bean, Jr., and Anna E. Mack, Buffalo, N. Y., of counsel), for defendants.

CURTIN, Chief Judge.

The plaintiff, Mother's Restaurants Incorporated ["MRI"], brought this action seeking a declaratory judgment that its use of the trade names and service marks "Mother's Pizza Parlour," "Mother's Pizza Parlour & Spaghetti House," and "Mother's," in connection with its operation of a then, soon–to–be–opened restaurant on Transit Road, Amherst, New York, would not infringe on any rights of the defendants. The defendants are Mother's Bakery, Inc. ["Mother's Bakery"] and Mother's Bakery Amherst, Inc. ["Mother's Amherst"], both of which are existing restaurants in the Buffalo, New York metropolitan area. Almost immediately after this action was filed, the defendants made a motion for a temporary restraining order or preliminary injunction restraining plaintiff from opening and operating the proposed restaurant utilizing the name "Mother's" in any fashion. I heard oral arguments with respect to the defendants' motion for a preliminary injunction on March 19, 1980. Both sides represented that no further factual information was necessary for the court to make a decision on the motion. No temporary restraining order against the opening of the

restaurant was issued, and I reserved decision on whether a preliminary injunction should be granted.

## FACTUAL BACKGROUND

MRI is a Canadian corporation with its principal office in Burlington, Ontario. MRI's predecessor opened its first "Mother's Pizza Parlour" restaurant in Hamilton, Ontario in December of 1970. From that time until the present, MRI has developed a chain of 46 restaurants, all following the format of the original restaurant. The restaurants serve pizza and other Italian dishes in a 1930's boardinghouse atmosphere aimed at attracting a family–oriented clientele; they also operate a takeout and delivery service. Each of the restaurants in the chain has utilized the name "Mother's" or "Mother's Pizza Parlour" in some form. Of the 46 restaurants, 43 are located in Canada and 3 in Columbus, Ohio. In addition to the new restaurant at issue in this case, MRI proposes to open an additional restaurant in Rockville, Maryland within a short time and has further plans for restaurants in other parts of the United States. This growth is also reflected in MRI's gross sales, which have arisen from $361,000 in 1971 to approximately $45,000,000 in 1979.

To foster this growth, MRI has engaged in substantial advertising since 1971. Radio advertising apparently has been the principal medium utilized, and MRI has purchased radio time on stations located in Hamilton, Ontario and Kingston, Ontario which broadcast their radio beams into New York State. Exhibit 7 of the Perry Affidavit, a "reach map" of Station CHML in Hamilton, shows that its broadcasts have reached the Buffalo -area in the United States.

MRI has also pointed to its promotional efforts to attract American tourists to its restaurants in Canada, many of which are near Buffalo along the well–traveled Niagara Peninsula corridor.

In order to protect its name and service mark, MRI has obtained trademark registrations in Canada for the marks "Mother's Pizza Parlour" (Registration No. 207,302; application filed March 15, 1971, granted May 23, 1975), "Mother's Pizza Parlour and Spaghetti House" (Registration No. 239,584, dated February 21, 1980), and "Mother's" (Registration No. 207,342, dated May 30, 1975). In addition, on September 17, 1971 MRI's predecessor filed a trademark application with the United States Patent and Trademark Office to register "Mother's Pizza Parlour" in this country. This application, made by a Canadian party, was filed pursuant to the Paris Convention for the Protection of Industrial Property. See 15 U.S.C. § 1126(e). The Patent and Trademark Office issued a registration, Reg. No. 1,040,322, for the service mark "Mother's Pizza Parlour" on May 25, 1976 for use in restaurant services. This registration gives a filing date of September 17, 1971. See Affidavit of Michael John Martino, Exhibit 5.

The defendant Mother's Bakery is a New York corporation. It opened for business as a restaurant on December 27, 1972, at 33 Virginia Place, Buffalo, New York. It has continuously conducted business under the name "Mother's Bakery" since that time, and has used both the words "Mother's" and "Mother's Bakery" in connection with its restaurant operations and advertising. The defendant Mother's Amherst is also a New York corporation and was apparently an expansion by the principals of Mother's Bakery to a suburban location. It has operated as a restaurant at 4575 Main Street, Amherst, New York, in a suburb close to Buffalo, since July, 1978. It too has extensively used the word "Mother's" in connection with its restaurant business.

The business of the defendants has been successful. Since at least 1976, Mother's Bakery has had annual sales of $500,000, and the defendants' combined annual sales today exceed $1,500,000. This figure is purportedly among the highest annual sales figures for restaurants in the Western New York area. See Affidavit of Sheldon Benatovitch, ¶ 5. There appears little question that the defendants have developed a large clientele and much good will in the Greater Buffalo area. The defendants have not

provided any specific information as to the amount of money spent on advertising since 1972, or even in recent years, nor have they specified the forms of advertising utilized. The exhibits attached to their supporting affidavits, however, are advertisements of various kinds all of which prominently promote and focus on the word "Mother's." Neither of the defendants has obtained a registration of its service mark from the Patent and Trademark Office.

To complete the factual discussion, the court has also reviewed the examples of the logos of the respective parties provided as exhibits to the Affidavit of Sheldon Benatovitch. *See* Exhibits A–E. Finally, the court takes note that the defendants are far from the only businesses in the State of New York which have utilized the word "Mother" or "Mother's" in connection with their trade names or marks. *See* Exhibit A to the Affidavit of David S. Kashman, at 1–16, which contains a list of numerous businesses using the name "Mother's," several of which appear to be in the restaurant services business.

## DISCUSSION

On a motion for a preliminary injunction, the standard for issuing such a remedy is as follows:

> there must be a showing of possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Caulfield v. Board of Education of City of New York*, 583 F.2d 605, 610 (2d Cir. 1978); *Markel v. Scovill Mfg. Co.*, 471 F.Supp. 1244, 1247 (W.D.N.Y.1979), aff'd mem. 610 F.2d 807 (2d Cir. 1979). A preliminary injunction is an extraordinary remedy which should not be granted except upon a clear showing, under the above standard, by the party seeking such relief. *See Beech–Nut, Inc. v. Warner–Lambert Co.*, 480 F.2d 801, 803 (2d Cir. 1973); *Clairol, Inc. v. Gillette Co.*, 389 F.2d 264, 265 (2d Cir. 1968). Hold-

ing aside for now the question of irreparable injury, I will examine primarily the likelihood of defendants' being successful on the merits.

The plaintiff contends that the defendants do not have a strong likelihood of success on the merits and, thus, no right to a preliminary injunction, for three reasons. First, plaintiff argues that, by virtue of the federal registration it holds for the service mark "Mother's Pizza Parlour," it has a prima facie right to use that mark. Second, plaintiff claims a constructive use date of September 17, 1971, the filing date listed on its registration for "Mother's Pizza Parlour," and an actual use date of 1971, based on its radio advertising reaching Western New York, both of which predate the opening of Mother's Bakery. These use dates purportedly negate any claim of priority to the use of the word "Mother's" which defendants might allege. Third, the plaintiff argues that the mark "Mother's" is an especially weak mark which is not entitled to any protection. I believe that this motion can and should be resolved by focusing on the third argument, for it raises the primary question of whether the defendants have shown any entitlement to relief.

I

The defendants base their claim for injunctive relief on federal common law and on New York General Business Law § 368–d, which protects businesses against unfair competition and dilution of the strength of a trade or service mark. Assuming initially, for the purposes of analysis, that the Canadian plaintiff's United States registration of the service mark "Mother's Pizza Parlour" does not preclude the injunctive relief requested, the appropriate starting point, and the question upon which this motion will ultimately be resolved, is whether the defendants have made a showing that they are likely to succeed on the merits of their claims under these laws.

The essence of a claim of trademark infringement or unfair competition is the likelihood of confusion caused by the infringement among prospective customers.

Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, 523 F.2d 1331 (2d Cir. 1975); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956). The party claiming infringement of a common law mark must show not only a likelihood of confusion, but also, under certain circumstances, i. e., where the particular mark is not distinctive in itself, that the mark has developed a secondary meaning. Maternally Yours, supra, at 544. See 3 Callman, The Law of Unfair Competition Trademarks and Monopolies §§ 65–66 (3d ed. 1969). The test under the New York law of unfair competition is essentially the same, except that a mark need not have acquired a secondary meaning in order to be accorded protection. See Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc., 618 F.2d 950, 952 (2d Cir. 1980); Maternally Yours, supra, at 544; Mortellito v. Nina of California, Inc., 335 F.Supp. 1288, 1295 (S.D. N.Y.1972). For the defendants to succeed on their trademark and unfair competition claims, therefore, they must demonstrate that there exists a likelihood of confusion between the parties' marks.

## LIKELIHOOD OF CONFUSION

█ In determining whether a likelihood of confusion exists, the following factors are to be considered: the strength or weakness of the defendants' mark; the degree of similarity between the marks and the services offered by the respective parties; the competitive proximity of the parties; the intent of the alleged infringer in adopting its mark; the degree of care likely to be used by prospective customers; and, any actual confusion. See, e. g., Steinway & Sons, supra, at 1336; Carl Zeiss Stiftung v. VEB Carl Zeiss Jerra, 433 F.2d 686, 705 (2d Cir. 1970), cert. denied, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

## STRENGTH OF MARK

█ Analysis must begin with the recognition that the law protects a trade or service mark only if it has become distinctive. Westward Coach Mfg. Co. v. Ford Motor Co., 388 F.2d 627, 634 (7th Cir. 1968),

citing 3 Callman, Unfair Competition and Trade–Marks § 69 (2d ed.). The distinctiveness or strength of a party's mark is a principal factor to be weighed in determining "both the ease with which it may be established as a valid trademark and the degree of protection it will be accorded." McGregor–Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1131 (2d Cir. 1979). The strength of a mark refers to its tendency to identify goods or services sold under the mark as coming from a particular source. Id. A mark can be strong if it is conspicuously distinctive, unique and arbitrary in itself; it can also be strong, however, if it has, through the promotional efforts of its owner, developed a secondary meaning. See, e. g., W. E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 661 (2d Cir. 1970); Westward Coach, supra, at 634; National Automobile Club v. National Auto Club, Inc., 365 F.Supp. 879, 884 (S.D.N.Y.1973). The primary focus must always be on the mark's "origin–indicating quality," Drizzle, supra, at 1131, to potential customers, Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 699 (2d Cir. 1961).

The defendant's mark, "Mother's Bakery," can be categorized as coined or arbitrary; as an entire entity, the mark is distinctive and unique. The defendants would, therefore, be entitled to significant protection against its use by another party because it has a strong tendency to indicate a particular party or source. The defendants, however, seek to prohibit plaintiff from using one component of that mark, the word "Mother's," which they have used singly not only at the defendants' Amherst location but in connection with Mother's Bakery as well. In other words, they seek the exclusive right to use the word "Mother's" in connection with a restaurant in the Greater Buffalo area.

█ When considered as a mark by itself, "Mother's" first of all is a very commonly used word. Although the fact that a word is commonly used is not determinative of whether or not it may become a trademark, its use in connection with the services in question necessarily must be distinctive.

See Purex Corporation, Ltd. v. Maryland Paper Products Co., 287 F.2d 186, 188 (C.C. P.A.1961). In this case, the frequent use of "Mother's" in connection with all types of business ventures, including restaurants, throughout New York State has diluted the distinctiveness of the word. See Affidavit of David Kashman, Exhibit A, at 1–16. The likelihood, therefore, that the mark "Mother's" will indicate to a potential customer a single, particular origin or operator of restaurants is not strong.

■ The defendants contend, nonetheless, that their mark has acquired secondary meaning. A party claiming secondary meaning "must show that the primary significance of the term in the mind of the consuming public is not the product but the producer." Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938); National Automobile Club, supra, at 884. The relevant factors to be considered are the length and manner of the mark's use, the nature and extent of the owner's advertising, and other promotional efforts to connect the mark with the business venture. Maternally Yours, supra, at 544.

There is no dispute that the defendants have utilized the word "Mother's" in connection with their restaurants since Mother's Bakery was first opened. Moreover, one can infer from the relatively high gross sales figures that the defendants have successfully promoted their trade name and marks and that they have developed much good will among the restaurant–going public. On the other hand, the defendants have presented no evidence whatsoever as to the amounts expended on their advertising. Nor does the record give one a sense for the manner or frequency of their advertising during the eight years in question; to what extent, for example, the word "Mother's" has been promoted as distinct from "Mother's Bakery" or the much newer "Mother's Amherst" has not been demonstrated. Moreover, the conclusory assertions in the Chandler and Benatovich Affidavits that the name "Mother's" is only associated with the defendants' two restaurants in the minds of the Western New York public, or the bare assertion that a random sampling of people in the area would confirm that, beg the point and provide no assistance in resolving the question.

On the record before me, I cannot find that the defendants' mark "Mother's" has acquired secondary meaning. In evaluating the strength of defendants' mark, therefore, I conclude for the reasons discussed above that defendants' mark "Mother's" is relatively weak.

COMPARISON OF MARKS

■ In the inquiry as to the likelihood of confusion, a second important factor is the similarity of the parties' marks. The Second Circuit recently has pointed out the two essential principles to be considered in making a comparison of the competing marks.

> First, even close similarity between two marks is not dispositive of the issue of likelihood of confusion. "Similarity in and of itself is not the acid test. Whether the similarity is likely to provoke confusion is the crucial question." Callman § 82.1(a), at 601–02 (footnote omitted). For this reason cases involving the alteration, addition or elimination of only a single letter from the old mark to the new reach divergent results. E. I. DuPont de Nemours & Co. v. Yoshida Internat'l, Inc., supra, 393 F.Supp. [502] at 511–12. Second, in assessing the similarity of two marks, it is the effect upon prospective purchasers that is important. Restatement of Torts § 728, Comment b at 591.

Drizzle, supra, at 1133. In addition, the contexts in which the marks are generally presented is a relevant factor. Thus, the respective marks must be considered as entire units. National Automobile Club, supra, at 882; Societe Anonyme v. Julius Wile Sons & Co., 161 F.Supp. 545, 547 (S.D.N.Y. 1958). Moreover, the consuming public is not expected to analyze or to dissect the respective marks carefully; rather, it is the overall impression which the infringing mark is likely to make which is crucial. Drizzle, supra, at 1134.

In this case, the initial and most prominent component of the alleged infringer's mark, "Mother's Pizza Parlour," or "Mother's Pizza Parlour and Spaghetti House," is clearly the word "Mother's." MRI's mark shares this prominent characteristic with defendants' "Mother's Bakery" and the "Mother's" mark which Mother's Amherst utilizes singly. The parties' marks, therefore, are similar to a certain extent at least. Further comparison, however, shows little or no additional similarity. The additional words or components of MRI's mark, "Pizza Parlour," are not in any way similar to Mother's *Bakery*, and they distinguish plaintiff's mark from both "Mother's Bakery" and "Mother's," used alone. Moreover, the context in which the marks are presented is not closely similar. My review of the advertising material shows that the logos and typeface incorporated by the respective parties in presenting their marks are not the same and not very similar. In addition, the terms "Pizza Parlour" and "Pizza Parlour and Spaghetti House" connote a specific type of restaurant, namely, one serving Italian food, which further distinguishes plaintiff's from defendants' marks, for defendants' marks could have no such impression.

Nonetheless, despite these differences in the parties' marks when they are compared as entire units, the consuming public may still be drawn or influenced by the most prominent word in MRI's mark, "Mother's." Although I do not find the marks closely similar, the impression made by the use of this word may still have some effect.

COMPARISON OF SERVICES, COMPETITIVE PROXIMITY, DEGREE OF CARE

Plaintiff, in seeking to distinguish its services from that of defendants, contends that its Mother's Pizza Parlour restaurant on Transit Road in Amherst seeks to attract a family–oriented customer in contrast to defendants' restaurants which have sought out and attracted a young professional and "singles" segment of the restaurant–going public in the Buffalo area. Plaintiff further argues that alcoholic consumption and sales play a far more important role in defendants' restaurants than they will in its own, and that its emphasis on pizza and Italian food will cause a further distinction in the customer's mind between Mother's Pizza Parlour and defendants'. two restaurants. Finally, plaintiff represents that its thematic decoration of its restaurant in a 1930's, boardinghouse style, paralleled by embellishments such as waitresses' uniforms, will give it a distinct image with no possible connection to the defendants.

Although not clearly articulated, these arguments suggest that the parties are not in close competitive proximity because the nature of their respective restaurants is different. This contention is not without some persuasiveness between the parties and services. The degree of competitive proximity is relevant "primarily insofar as it bears on the likelihood that customers may be confused as to the *source* of the products, rather than as to the products themselves ...." *Drizzle, supra,* at 1134 (emphasis in original). Although the court in *Drizzle* was confronted with a matter involving a trademarked *product,* its direction is instructive in the instant restaurant service context as well.[1]

The plaintiff's emphasis on pizza and Italian food, which as previously noted is given prominence in its mark, is distinct from that of the defendants' restaurants. Neither Mother's Bakery nor Mother's in Amherst presents itself as specializing in Italian food, nor do they in fact. In this sense the services offered by the respective parties are not similar. Moreover, the degree of care used by customers in deciding where to go for dinner or another meal can be fairly discriminating; potential customers are not likely to choose Mother's Bakery if pizza or Italian food is their urge at a particular time. The mark "Mother's Pizza Parlour & Spaghetti House," on the other hand, suggests just such a food service. If, as plaintiff projects, the Mother's Pizza Parlour restaurant develops a "family im-

1. *See* n. 2, *infra.*

age," this may also become a factor distinguishing it from defendants' restaurants in certain customers' considerations.

Despite the differences between the plaintiff and defendants as to the type of food and atmosphere offered by their restaurants, the parties will no doubt be in some competitive proximity. Mother's Pizza Parlour on Transit Road in Williamsville and Mother's on Main Street in Snyder are both within the same township, Amherst, and only a few miles apart. More importantly, the parties' restaurants will both serve liquor as well as food and, therefore, no distinction can be drawn on that basis. Although the type of food served may not be identical, restaurants are not generally like the *products* of manufacturers, which can indeed be non–substitutes and non–competitive. A meal, however, purchased in Mother's Bakery is one not purchased in Mother's Pizza Parlour, and each restaurant competes directly for the finite number of purchases in restaurants by a customer. To a certain extent, therefore, fine distinction between atmosphere and food are not helpful to the analysis. Given the above, I find that the parties are in moderately close competitive proximity.

 Whether this proximity is likely to cause confusion among consumers as to the source or operation of Mother's Pizza Parlour is less clear. In other words, will the consumer be likely to think that it is owned or operated by defendants? The differences in the type of food served, and its emphasis in the plaintiff's name and mark, suggest otherwise, for defendants have no prior association with Italian food. It is not improbable, however, that some potential customers, given the plaintiff's use of "Mother's" in its name, may believe that defendants have expanded into a somewhat different type of restaurant. How common that belief may be and whether it is likely to continue is unclear.[2]

## INTENT OF THE ALLEGED INFRINGER

An additional factor which is relevant to the court's analysis is the intent of the alleged infringer in adopting and using its mark. If an intent to benefit from a senior user's mark exists and can be shown, probable confusion is presumed.

In this case, there is no dispute that the plaintiff was aware of the defendants' use of the word "Mother's" when it decided to use the "Mother's Pizza Parlour" mark. There is no evidence in the record, however, which suggests that MRI has adopted and is using the word "Mother's" at its Transit Road restaurant in order to capitalize upon the good will and mark of the defendants. MRI's predecessor first used the word "Mother's" in Ontario many years before, in fact prior to the defendants' adopting its mark, Mother's Bakery, and plaintiff has used the word extensively in Canada since 1971. Moreover, plaintiff applied for Canadian and United States registrations of its "Mother's Pizza Parlour" mark prior to the

---

**2.** When a court must determine whether a trademark owner will be protected against the use of a similar mark on *products other than those to which the owner has applied it* up to that time, the factors to be considered in determining the likelihood of confusion are nearly the same as set forth above in *Steinway & Sons, supra*, and as used in this case. *See Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). In addition, however, the reviewing court must consider whether "the prior owner will bridge the gap" to market the different. *Polaroid, supra*, at 495. This is partly because where non–competitive goods are involved, the law protects only the senior user's good will and interest in an untarnished reputation, and his interest in being able to enter a related field at some future time. *Mushroom Makers, supra*, at 44.

In this case, because all restaurants in a given area are in competition to at least a certain extent, the *Polaroid* analysis would not seem strictly applicable. Nonetheless, whether or not in the consumer's mind a particular party is likely to "bridge the gap" to the operation of a different type of restaurant from what it operated in the past seems a relevant consideration in determining the likelihood of consumer confusion. Thus, it has been briefly considered in the text.

establishment of Mother's Bakery. Although plaintiff's use in Canada does not give it any rights to protection in this country, the long, extensive use in Canada and the applications show that the use of the word "Mother's" at the Mother's Pizza Parlour location in Amherst, New York is simply a continuation of the use of the words used by plaintiff since its inception. No inference can be drawn that plaintiff has used the word in bad faith to create the impression of being operated or owned by, or having any connection with, the defendants.

### ACTUAL CONFUSION

The defendants have submitted some evidence of actual confusion. Edgar Chandler, one of the principal officers of the defendants, attested that during the time after Mother's Pizza Parlour began advertising its opening, approximately 40 patrons asked him in his restaurants when he was opening the "third Mother's." See Affidavit of Edgar Chandler of March 14, 1980. In addition, the affidavits of Lawrence Constantino, the manager of Mother's Bakery, and of JoAnn Cortese, a secretary and bookkeeper at Mother's in Amherst, reveal that defendants received a number of telephone calls from people seeking employment at the "new Mother's." Because the record was made before Mother's Pizza Parlour opened, however, the record could not, of course, contain any evidence of actual confusion among the restaurant–going public who have actually confronted Mother's Pizza Parlour since it opened.

From the above affidavits, the inference can be drawn that some limited actual confusion has occurred. It appears that some patrons of the defendants believed, prior to the opening of the Mother's Pizza Parlour restaurant, that it would be the defendants who would be operating the new establishment. How lasting such confusion may be is unclear, and the extent of it must be discounted to a certain extent because of the self–serving nature of the supporting affidavit. A similar inference can be drawn from the telephone calls about employment. These do not show any customer confusion; they do show that the public may have some limited confusion as to the source of operations of Mother's Pizza Parlour.

### CONCLUSION

As is usual in most trademark cases, the court is not struck immediately with the rightness of one side's position. Although I have not found defendants' mark "Mother's" to have acquired a secondary meaning, the defendants have successfully promoted their restaurant business using the Mother's Bakery and Mother's names. Moreover, they have introduced affidavits showing some limited instances of actual confusion. Finally, the presence of the word "Mother's" in the plaintiff's competing mark, "Mother's Pizza Parlour," makes the marks of the respective parties similar to a certain extent.

Yet, all of the relevant factors must be taken into account in determining whether a likelihood of confusion exists, and no one factor is determinative. Drizzle, supra, at 1139; Triumph Hosiery Mills Inc. v. Triumph Internat'l Corp., 308 F.2d 196, 200 (2d Cir. 1962). In this case there can be no inference that the plaintiff has adopted and is using its mark with the intent to capitalize on defendants' marks. Second, although the parties are in some competitive proximity, the likelihood that potential customers will in the long run believe that Mother's Pizza Parlour is operated by the defendants is weak. Moreover, a comparison of the respective marks shows no similarity beyond the common word, "Mother's." In fact, the additional terms in plaintiff's mark, "Pizza Parlour" or "Pizza Parlour & Spaghetti House," are likely to have a strong distinguishing impact on the consumer, and they leave no impression of any connection with the defendants.

Finally, and perhaps most importantly, the mark which defendants seeks to protect is relatively weak. As noted above, it is true that the defendants have successfully operated their original and suburban restaurants. But, they seek exclusive rights to more than the "Mother's Bakery"

and "Mother's Amherst" names as entire entities. Their effort is to secure the exclusive right to use the word "Mother's" in the Buffalo area. As discussed above, this word is too commonly used and too diluted to be distinctive or a strong indicator of origin. For all of the above reasons, I find that the defendants have not shown that a likelihood of confusion will exist if the plaintiff is allowed to continue its use of the "Mother's Pizza Parlour" mark at its restaurant on Transit Road in Amherst.

Because I have found that there is no likelihood of confusion between the respective marks of the parties, the defendants have failed to show a likelihood that they will succeed on the merits of their claim of service mark infringement. They have failed, therefore, to satisfy a principal element of the first prong of the Second Circuit's *Caulfield* test, set forth above. Based upon my discussion of the likelihood of confusion, I also find that there has been no showing of sufficiently serious questions going to the merits which would satisfy the second prong of the *Caulfied* test. Therefore, the defendants have shown no right to injunctive relief with respect to their claims under federal common law.

In addition to the lack of a likelihood of confusion between marks, an additional factor weighs against granting defendants the injunctive relief they request, a factor closely related to the distinctiveness of the word "Mother's." "Mother" or "Mother's" is not only a word of very common usage. It is a word imbued with much symbolic importance, and it is no doubt exploited so frequently because of the impression it imparts of a connection to the values of motherhood, home and family. This is certainly evidenced by the great frequency of uses by non–parties to this case, discussed above. There would seem to be a general advantage to businesses in exploiting the word "Mother's" which this court should be extremely hesitant to confer upon one business alone. *See Durable Toy & Novelty Corp. v. J. Chein & Co., Inc.*, 133 F.2d 853 (2d Cir.), *cert. denied*, 320 U.S. 211, 63 S.Ct. 1447, 87 L.Ed. 1849 (1943) (per L. Hand, A. Hand, Frank); *Chandon Champagne Corp.*

*v. San Marino Wine Corp.*, 335 F.2d 531 (2d Cir. 1964).

## II

■ The defendants also claim that they are entitled to the injunctive relief they request under New York General Business Law § 368–d, New York's anti–dilution statute. This section reads:

> Likelihood of injury to business reputation or of dilution of the *distinctive quality* of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

General Business Law § 368–d (McKinney's 1968) (emphasis supplied). The New York Court of Appeals has recently stated that a party seeking injunctive relief under this section need not show confusion between marks. *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162 (1977). Although this statement has been characterized as dictum and contrary to the weight of state and federal authority by the Second Circuit, *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979), other courts have similarly focused on the different nature of the injury caused by dilution of a trademark and have noted that the standard for relief is more lenient. *Mortellito v. Nina of California*, 335 F.Supp. 1288, 1295–96 (S.D.N.Y.1972). Thus, defendants' inability to show a likelihood of confusion does not necessarily preclude an injunction under § 368–d.

However, § 368–d does require at least a likelihood of injury to business reputation or of dilution of the *distinctive* quality of a party's name or trademark; the trademark must be unique or have acquired a secondary meaning. *Allied Maintenance, supra,* at 632–33, 399 N.Y.S.2d 628, 369 N.E.2d

1162. In this case, I have found already that the defendants' marks have not acquired a secondary meaning and that "Mother's" is not distinctive enough in its own right to be a strong trade name. There is, moreover, no claim by defendants that the plaintiff's services are somehow inferior to defendants' so as to tarnish the reputation of the defendants in some way. *See Mortellito, supra.* Therefore, defendants are not entitled to protection under the New York anti–dilution statute.

## III

For the reasons which have already been discussed, I conclude that the defendants' motion for a preliminary injunction, restraining plaintiff from using the word "Mother's" in connection with its restaurant in Amherst, must be denied.

In making this decision it has not been necessary to reach and discuss certain of the arguments presented by both parties in their legal memoranda. More specifically, in concluding this opinion I wish to indicate that my decision is in no way based upon the plaintiff's arguments (1) that its prima facie right, pursuant to its registration, to use the "Mother's Pizza Parlour" mark precludes the injunction, or (2) that it has priority of use by virtue of the filing date on its registration or through its radio advertisements beamed to the Buffalo area. It is no doubt true that a federal registration such as plaintiff holds for "Mother's Pizza Parlour" gives a party substantial substantive and procedural advantages. These include a prima facie right to the exclusive use of the mark in commerce on the designated goods or services, and a presumption of use from the filing date on the registration. 15 U.S.C. § 1115(a). *See generally* 4 Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 76.1 (3d ed. 1970).

■ Mere registration, however, does not give a party a right to the protection of its mark, which is left to resolution by the courts. *See, e. g., Flexitized, Inc. v. National Flexitized Corp.,* 335 F.2d 774 (2d Cir. 1964), *cert. denied,* 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965). A party opposing a registrant may prove any defense or defect which may have been asserted if the mark were not registered. 15 U.S.C. § 1115(a). Moreover, where a Canadian registrant is involved, compliance with the strict requirements of 15 U.S.C. § 1126 are required. The letters received after submission of this motion, initially from counsel for the defendants,[3] increased the court's concern, already developed through its own research, that certain issues existed with respect to the plaintiff's compliance with § 1126 and the appropriateness of the filing date on plaintiff's registration for "Mother's Pizza Parlour" which had not been clarified. But, in light of the court's decision with respect to the defendants' failure to show a likelihood of success on the merits, it is not necessary to resolve these issues in order to rule on defendants' motion. Even if defendants are correct that the 1971 filing date issued to MRI on its registration for "Mother's Pizza Parlour" is wrong, the filing date has not been material to my decision. Rather, the injunctive relief is denied because defendants have failed to show a likelihood of confusion.

For this reason the court has also not given any weight to the plaintiff's argument that it should be accorded an actual use date for its "Mother's Pizza Parlour" mark of 1971, by virtue of its radio broadcasts reaching the Buffalo, New York area. The court does not in any case find this argument compelling, nor do I find the evidence supporting it strong; the *Koffler Stores, Ltd. v. Shoppers Drug Mart, Inc.,* 434 F.Supp. 697 (E.D.Mich.1976), case involved a much different set of circumstances. Thus, in reaching my decision, the court has not given any weight to plaintiff's arguments of either constructive or actual use of the word "Mother's" prior to that of the defendants.

3. *See* Letter from Edwin T. Bean, dated June 20, 1980, and letter from George Gottlieb, dated

June 27, 1980.

The court also did not have to reach one of the defendants' principal arguments. In light of the plaintiff's registration for "Mother's Pizza Parlour," and faced with the assertion of rights ordinarily accompanying registration, the defendants argued that a junior user who is the first to adopt a disputed mark in a limited geographical area is exclusively entitled to exploit the mark in that limited area, relying on *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), and *United Drug Co. v. Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918). Because no importance was given to plaintiff's registration and, thus, no priority of use accorded to plaintiff, defendants' argument was not material and did not have to be reached. In any case, however, the continuing importance of the Hanover–United Drug exception is open to much question since the passage of the Lanham Act, especially 15 U.S.C. § 1072. *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362–64 (2d Cir. 1959). *But see Value House v. Phillips Merchantile Co.*, 523 F.2d 424 (10th Cir. 1975).

### SUMMARY

The defendants' motion for a preliminary injunction is denied.

The foregoing opinion constitutes the findings of fact and conclusions of law of this court, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

The plaintiff is directed to prepare an order in accordance with this decision and submit it to the court, with notice to the defendants.

So ordered.