**MUSHROOM MAKERS,
INCORPORATED,
Plaintiff-Appellee,**

v.

**R. G. BARRY CORPORATION,
Defendant-Appellant.**

**No. 917, Docket 77–7619.**

United States Court of Appeals,
Second Circuit.

Argued June 8, 1978.
Decided July 11, 1978.

Walter D. Ames, Washington, D. C. (Watson, Cole, Grindle & Watson, Washington, D. C., Henry B. Roth and Herzfeld & Rubin, New York City, of counsel), for defendant-appellant.

Leslie D. Taggart, New York City (Frank J. Colucci, Howard B. Barnaby, Jr., and Watson, Leavenworth, Kelton & Taggart, New York City, and Sumner Silver, David A. Talman and Talamo, Phillips, Silver & Talman, Inc., Worcester, Mass., of counsel), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, FEIN-BERG, Circuit Judge, and WERKER, District Judge.*

PER CURIAM:

In this appeal from a judgment and order of the United States District Court for the Southern District of New York, Edward Weinfeld, *Judge*, defendant-appellant R. G. Barry Corporation ("Barry") contends that it was error to dismiss its counterclaims for trademark infringement, unfair competition and false designation of origin and deny a motion for leave to file an additional counterclaim under the New York anti-dilution statute.[1] Plaintiff-appellee Mushroom Makers, Inc. ("Mushroom Makers"), which instituted this action for a declaration and judgment that its use of the trademark MUSHROOM and tradename MUSHROOM MAKERS in connection with the promotion and sale of women's jeans, jackets, skirts and overalls did not constitute infringement of or unfair competition with Barry's registered MUSHROOMS trademark used to identify Barry's line of casual shoes, sandals and slippers for women, has not appealed from that portion of the district court's decision which requires it to place on all hang tags and in all advertisements for its MUSHROOM sportswear a statement disclaiming any connection with Barry or Barry's MUSHROOMS footwear.[2]

## I

Judge Weinfeld carefully detailed the facts in an opinion reported at 441 F.Supp. 1222 and no purpose would be served by repeating them here as exhaustively. A brief summary is however in order at the outset.

Barry began to market MUSHROOMS footwear in 1974. On February 4, 1975 and again on January 13, 1976, the MUSH-ROOMS trademark was registered in the United States Patent and Trademark Office under International Class 25 for use on Barry's slippers, shoes and sandals. Barry's sales of MUSHROOMS footwear from the time it commenced production through the first half of 1977 aggregated almost six million dollars; its advertising costs for the same period totalled more than one million dollars, and much of that amount was spent for advertising purchased in cooperation with its retail outlets, of which there were more than 2500.

Mushroom Makers first contemplated marketing "misses" sportswear under the MUSHROOM trademark and trade name in June or July of 1975. One Earle Sheldon, who was participating in the development of the product line, suggested that it be marketed under the MUSHROOM label because an aunt who had cared for him during childhood was fascinated by that particular fungus. At the time that he recommended this, Sheldon was unaware that Barry was already marketing MUSH-ROOMS products.

Interstate shipments of MUSHROOM sportswear to retail outlets began in October of 1975 and have risen meteorically since then: in November of 1975, MUSH-

---

* Honorable Henry F. Werker, District Judge of the Southern District of New York, sitting by designation.

1. N.Y.Gen.B.Law § 368–d (McKinney 1968).

2. The statement required by the judgment is that:

> Mushroom Makers, Inc. Does Not Manufacture, Sell Or Distribute, Shoes, Slippers Or Sandals Under the Name Of Mushroom Or Mushrooms Nor Has It Any Connection With Any Firm Selling Shoes, Slippers Or Sandals Under The Name Of Mushroom Or Mushrooms.

(App. at 781a, 783a).

ROOM sales totalled $16,200; at the time of trial, sales for 1977 were projected to reach the twenty million dollar level. In contrast to Barry's sales experience, this dramatic rate of growth was achieved with a total expenditure of less than $200,000 for advertising.

At trial, Mushroom Makers conceded that its mark was identical to the one used by Barry.

## II

■ It is well settled that the crucial issue in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question. *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 542 (2d Cir. 1956). The court, in making this determination and fashioning suitable relief, must look not merely to the age of the competing trademarks, but to a host of other factors. As we noted in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961):

> Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account. American Law Institute, Restatement of Torts, §§ 729, 730, 731.

*Accord, Scarves By Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976).

The district court recognized that these were the appropriate factors to be considered and reviewed them carefully before concluding that there was (1) no infringement by Mushroom Makers as the junior user, (2) no likelihood of confusion, (3) no bad faith in Mushroom Makers' use of the MUSHROOM mark, (4) no proximity between the products manufactured by the parties, (5) no prospect that future additions to their respective lines would "bridge the gap" between them, and finally (6) no likelihood that Mushroom Makers' products would subsequently decline in quality and thereby tarnish Barry's reputation. Nevertheless, despite his conclusion that "the scales tip in favor of [Mushroom Makers]," the district judge directed that the cautionary statement noted earlier be adopted in an effort to avoid any further litigation between the parties.

On appeal, Barry argues that the district court erred in holding that there was no trademark infringement, false designation of origin or unfair competition, in finding that Mushroom Makers acted in good faith and consequently in failing to grant an injunction. It is also claimed that the district court abused its discretion by refusing to permit a post-trial amendment of the answer to assert an additional counterclaim. While we agree with certain of Barry's contentions, after careful examination of the record, we hold that they do not shift the balance of interests and therefore affirm the district court's decision.

■ In considering the proximity of the products, the district court impliedly rejected our decision in *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 612 (2d Cir.), *cert. denied*, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960), in which we indicated that there was no basis for finding that the goods were "so unrelated as to attract different segments of the feminine purchasing public" where the defendant sold sportswear for women under the "Haymaker" trademark to retail outlets which also carried plaintiff's shoes marketed under the "Haymakers" trademark. However, we see no reason to depart from our *Avon Shoe* holding in the case presently before us. Indeed, since both cases involve trademarks which are merely the singular and plural

forms of the same word and substantially identical goods directed at the same market and sold through the same outlets, it is difficult to conceive of any reason to distinguish them. Accordingly, as in *Avon Shoe* we find not only that the products are proximate, but that likelihood of confusion was as a matter of law established. *Id.* See also *Carlisle Shoe Co. v. Societe Anonyme: Roger Fare & Cie*, 278 F.2d 519, 47 CCPA 966 (1960) (women's gloves and shoes); *General Shoe Corp. v. Hollywood-Maxwell Co.*, 277 F.2d 169, 47 CCPA 933 (1960) (brassieres and women's shoes); *General Shoe Corp. v. Lerner Brothers Manufacturing Co.*, 254 F.2d 154, 45 CCPA 872 (1954) (men's footwear and sports shirts); *Villager, Inc. v. Dial Shoe Co.*, 256 F.Supp. 694, 701–02 (E.D.Pa.1966) (women's apparel and shoes).

■ After recognizing that Barry's MUSHROOMS mark was "arbitrary and fanciful," and therefore conceptually strong when applied to footwear, the district court proceeded to consider "its true strength" in the market place, finding that it had not "caught on" in a commercial sense. However, having established that its mark was conceptually strong, Barry met its burden with regard to the first *Polaroid* variable. See *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1100 (2d Cir. 1969), *cert. dismissed*, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970). *See also Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976); 3 R. Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 77.1, at 336–37 (3d ed. 1969). Consequently, Barry's relative success in the marketplace, although certainly a factor to be considered in balancing the "conflicting interests" of the parties, *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d at 613, should not have been relied upon to belie the strength of Barry's MUSHROOMS mark.

■ Barry's remaining assertions of error with regard to the trial court's *Polaroid* findings lack merit. Although it is true that we have commented upon the difficulty of establishing actual confusion on the part of retail customers, see *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970); *Miles Shoes, Inc. v. R. H. Macy Co.*, 199 F.2d 602, 603 (2d Cir. 1952), *cert. denied*, 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345 (1953), the district court quite properly noted that not a single instance of consumer confusion was actually demonstrated in the trial record. There was some evidence of clerical errors and joint advertising involving the two companies' products, but in the absence of any testimony to explain these events, the court was clearly entitled to find that they did not demonstrate actual confusion among retail customers. In any event, the instances cited by Barry are clearly *de minimis* in light of the sales histories of the parties. There is, in addition, no reason to quarrel with the district court judge's conclusion that Mushroom Makers adopted its MUSHROOM mark in good faith, notwithstanding the fact that it had both actual and constructive notice of Barry's registered MUSHROOMS trademark. To the contrary, as Judge Learned Hand observed in a decision aptly quoted in the opinion below, prior use of a trademark does not automatically entitle the first user to bar its use by others. *Federal Telephone & Radio Corp. v. Federal Television Corp.*, 180 F.2d 250, 251–52 (2d Cir. 1950). Indeed, even if a mark is registered, the presumption of an exclusive right to use it extends only so far as the goods or services noted in the registration certificate—here shoes, slippers and sandals. *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d at 613 n.7. The district court was therefore entitled to rely as upon the testimony of Mushroom Markers' treasurer, Howard Feinberg, who stated that he was not aware of any use of the MUSHROOMS mark by Barry and furthermore considered his firm's products to be unrelated.

■ The district court characterized this case as "close" and "vexing" and our inability to agree with its conclusions regarding strength of the senior mark, proximity of the products and likelihood of confusion unfortunately does nothing to simplify the ultimate issue: whether Barry is entitled to

injunctive relief against Mushroom Makers. As has been noted, however, merely winning the race to the trademark office doorstep does not entitle a senior user to relief in equity. Rather,

> a senior user possesses but two legitimate interests which may properly call for injunctive relief against a use by a junior user on related goods, namely, that he may at some future date desire to expand his business into the related field in which the junior user is operating and that he, in any event, should be able to develop his present business free from the stain and tarnishment which may result from improper trade practices of the junior user.

*Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d at 613.

■ Here, the parties both agreed that there was no likelihood of bridging the gap between their products. Barry indicated that it might in the future open "Mushroom Shoppes" in department stores, where women's accessories such as belts and handbags, in addition to footwear, would be sold. However, Barry made no suggestion that it would begin to market women's sportswear or that Mushroom Makers would develop a line of shoes. There was also no evidence that the quality of Mushroom Makers' sportswear was likely to deteriorate or that Mushroom Makers would begin to engage in trade practices which would work to Barry's detriment. If anything, it could be argued that Mushroom Makers' activities inure to Barry's benefit.

We therefore find, based upon the trial court record, that Mushroom Makers' interest in retaining the goodwill developed through concurrent use of an identical trademark far outweighs any conceivable injury to Barry; consequently we hold that the district court acted properly in denying the requested injunction.[3]

---

**3.** Barry argues further that the disclaimer required by the district court is meaningless because neither Mushroom Makers' hang tags nor any of its advertisements identify Mushroom Makers as the source of MUSHROOM sportswear. It also suggests that the disclaimer requirement is untenable because no procedures have been established for policing advertising placed by customers of Mushroom Makers. We express no opinion as to the merits of these contentions and suggest that they be placed before Judge Weinfeld through a motion under Fed.R.Civ.P. 60(b).

## III

■ The motion to amend the answer in this case, pursuant to Rule 15(a), Fed.R. Civ.P., to assert an additional counterclaim under the New York anti-dilution statute was filed more than three months after trial had concluded and some five days after the district court had "finalized," though not filed, its opinion. In an accompanying memorandum of law, Barry argued that leave to amend should have been freely granted because the New York Court of Appeals had recently decided a case which stated that, contrary to the weight of state and federal authority, it was not necessary to demonstrate confusion between marks in order to prevail on a claim under the state anti-dilution statute. *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 544–45, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1165–66 (1977). Barry neglected to note, however, that this statement was uttered in *dictum* and hence cannot be said to have changed the decisional law of New York State after the filing of the answer. Moreover, although it is true that the New York Court of Appeals had not previously defined the elements of a claim under the anti-dilution statute, other courts—both state and federal—had acknowledged that injury to a recognized trade name, rather than damage arising from confusion among consumers, lies at the heart of the wrong. *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London*, 378 F.Supp. 403, 414–15 (S.D.N.Y. 1974); *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288, 1295–96 (S.D.N.Y.1972) (Gurfein, J.); *Renofab Process Corp. v. Renotex Corp.*, 158 N.Y.S.2d 70, 77 (Sup.Ct.N. Y.County 1956). *See generally* 3 R. Callmann, *supra*, § 84.2. Denial of leave to amend the answer to the complaint was therefore entirely proper.

Affirmed.