**CUISINARTS, INC., Plaintiff,**

v.

**JOHN BOOS & CO., Defendant.**

**No. 84 Civ. 4262.**

United States District Court, S.D. New York.

July 30, 1985.

Garold E. Bramblett, Jr., Parmalee, Bollinger & Bramblett, Stamford, Conn., for plaintiff.

Ronald P. Kananen, Vorys, Sater, Seymour & Pease, Washington, D.C., Anthony J. Casella, New York City, for defendant.

## MEMORANDUM DECISION

GAGLIARDI, Senior District Judge.

Plaintiff Cuisinarts, Inc., a Connecticut corporation, commenced this action seeking an injunction against defendant's continued use of the name "Cuisi Cart" as a trademark in sale and distribution of one of its products, a wooden kitchen cart designed for use by gourmet home cooking enthusiasts. Plaintiff claims that use of the name "Cuisi Cart" infringes on its valid trademark registrations. Defendant John Boos & Co. ("Boos"), an Illinois corporation, claims that there is no infringement, maintaining that use of the name does not cause and is not likely to cause confusion in the mind of consumers. Boos also raises a defense of laches.

The parties have submitted a joint stipulation of facts.[1] Trial of the remaining factual questions was held before the court on June 6, 1985.[2] The court now makes the following findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

### Background

Plaintiff owns a number of trademark registrations for use of the terms "Cuisinart" and "Cuisinarts" in connection with food preparation equipment, aprons, and foodstuffs. Defendant Boos uses the term "Cuisi Cart" on a kitchen cart usable with a number of kitchen appliances, including food processors and related accessories.[3] The cart, which is wooden and has an electrical outlet strip on one side of the working surface, has the name "Cuisi Cart" branded on the front of the single drawer. No other trademark or name is used on the cart; nowhere does the name of "John Boos & Co." appear.[4]

Boos has produced and sold the "Cuisi Cart" in interstate commerce since on or

---

1. The first ten pages of document no. 21 (filed Feb. 20, 1985), entitled "Joint Statement of Uncontested Facts and Statement of Contested Areas of Fact," constitute the "stipulation."

2. The stipulation of the parties is adopted by the court and incorporated by reference. Familiarity with its content is assumed.

3. Built into the kitchen cart are a knife rack and a removable stainless steel bowl quite suitable for use with a food processor. An earlier version of the cart was also equipped with a rack for food processor blades.

4. Some of Boos's products are branded with the name of the product, followed by a reference to John Boos & Company. Other than the "Cuisi Cart," it does not appear that any of the carts produced by Boos is branded with a particular name. The "Cuisi Cart" is the only Boos cart branded with a specific name, without any reference to Boos.

before 1982.[5] Cuisinarts became aware of the cart's production in 1981. An exchange of letters followed. In September, 1981, Cuisinarts advised Boos that it considered use of the "Cuisi Cart" mark to infringe two of its trademark registrations. By letter dated December, 1981, Cuisinarts rejected a proposal by Boos to rename the cart "Cuisine Cart," and reiterated its demand that use of the mark "Cuisi Cart" be stopped. Neither Boos nor its attorneys responded to the December letter.

During the years 1982 and 1983, Cuisinarts received no reports that use of the mark continued; no further communications were sent. In 1984, Cuisinarts learned that Boos's use of the mark had continued unchanged during 1982, 1983, and 1984. Cuisinarts then commenced this action.

## Discussion

### I. Likelihood of Confusion

■ In deciding a claim of infringement of a valid trademark registration, the court must determine whether the allegedly infringing use is such that "an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question." *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1130 (2d Cir.1979), *quoting Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). In analyzing whether appreciable confusion is likely, the court must examine a number of factors, including the strength of the mark, the similarity of the marks, the proximity of the products, the likelihood that the trademark owner will "bridge the gap" between the products, actual confusion, sophistication of the buyers, defendant's good faith in adopting the mark, and the quality of defendant's product. Additional factors to be considered will be determined by the na-

ture of the particular case. *See Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *Thompson Medical Co., Inc. v. Pfizer, Inc.*, 753 F.2d 208 (2d Cir.1985); *C.L.A.S.S. Promotions v. D.S. Magazines, Inc.*, 753 F.2d 14, 17 (2d Cir.1985).

■ Upon consideration of the factors outlined in *Polaroid*, the court finds it likely that use of the "Cuisi Cart" mark will mislead or confuse an appreciable number of consumers.

### A. Strength of the Cuisinarts and Cuisinart Trademarks

"The term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous source." *McGregor-Doniger, Inc. v. Drizzle, Inc., supra*, 599 F.2d at 1131. Cuisinarts received the first of its seven trademark registrations in 1973. Where the Patent and Trademark Office has registered a mark without proof of secondary meaning, a presumption arises that a trademark is more than simply "descriptive," and thus is "strong." *See id.*, 599 F.2d at 1132; *Del Laboratories, Inc. v. Alleghany Pharmacal Corp.*, 516 F.Supp. 777 (S.D.N.Y.1981). Other indicators of trademark strength are sales figures and advertising expenditures. *See, e.g., Mushroom Makers, Inc. v. R.G. Barry Corp.*, 441 F.Supp. 1220, 1224 (S.D.N.Y.1977), *aff'd*, 580 F.2d 44 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *Del Laboratories, Inc. v. Alleghany Pharmacal Corp., supra*. In this case, Cuisinarts presented unchallenged evidence of large (and increasing) sales under the Cuisinart and Cuisinarts marks, and of large advertising expenditures.[6] For these reasons, the court finds

---

**5.** The first sales in interstate commerce may have been earlier than 1982. The precise timing does not affect the court's decision.

**6.** Testimony at trial places Cuisinarts's sales at approximately $60 million in 1982, and "higher" in 1984. Cuisinarts has spent more than $7 million over the years on advertising.

that the Cuisinarts and Cuisinart marks are strong.

### B. *Similarity of the Marks*

The court finds that the mark as branded on Boos's product is very similar to the Cuisinart and Cuisinarts marks. In spelling, the mark "Cuisi Cart" differs by only one letter from the mark "Cuisinart." Since no designation "by John Boos & Co." appears on the cart,[7] the word "Cuisi Cart" is not a fragment of the mark. It is the entire mark. *Cf. Thompson Medical Co., Inc. v. Pfizer, Inc., supra,* ("Sportsgel" is a fragment of mark Ben-Gay Sportsgel, where Ben-Gay name is used prominently on the product).

This similarity of the marks persists whether or not the court accepts the testimony that within Boos the name of the product was pronounced "Q–Z cart." From the testimony at trial of witnesses for Boos, it is clear that pronunciation within the company would have minimal effects on consumers, since the staff of Boos has little, if any, direct contact with retail or "ultimate" customers. Virtually all sales are at wholesale.

### C. *Proximity of the Products*

The court finds a considerable proximity between Cuisinarts's products and Boos's "Cuisi Cart." Plaintiff's products and defendant's cart are intended to reach the "gourmet home-cooking enthusiast." Cuisinarts's product line stresses electrical appliances and stainless steel cookware; Boos's cart incorporates a knife rack and stainless steel bowl, and specifically accommodates electrical appliances. Both Cuisinarts products and the "Cuisi Cart" are directed at the "high end" of the market, costing the consumer a considerable sum.[8]

Although it is certainly true that the flat work surface of the cart could be used with appliances of a type not produced by Cuisinarts, the features which distinguish the

cart from any plain counter-top or work surface make it more likely, not less, that the potential for use with an appliance such as a food processor would occur to a consumer. In this connection, the court notes that Cuisinarts has shown that retailers such as Spiegel have chosen to advertise Cuisinarts's food processor together with the "Cuisi Cart," even to the extent of pairing them in photographs or other artwork. A product so suited to advertising that suggests both complementarity and relatedness simply cannot be said to be competitively "distant" from Cuisinarts's products.

### D. *Likelihood that Cuisinarts Would Seek to Bridge the Gap*

Little evidence presented by either party addresses this issue. At this time, Cuisinarts's primary products include electrical appliances for the kitchen and stainless steel cookware. It does not produce any wooden carts. It has, however, been asked to approve such carts in the past, and has refused to do so because of potential difficulties in quality control. Also, the court notes that Cuisinarts's product line has expanded quite rapidly over the years, as have its sales. For these reasons, it cannot be said that the Cuisinart and Cuisinarts marks are confined to a defined subcategory of kitchen products. Thus, although the court cannot fix the probability that plaintiff would someday seek to produce (or license production of) a wooden kitchen cart, it determines that there is a real possibility that they would consider doing so.

### E. *Actual Confusion*

It is well-settled that a plaintiff may establish the likelihood of confusion without proof of actual confusion. *See McGregor-Doniger, Inc. v. Drizzle, Inc., supra,* 599 F.2d at 1136. Actual confusion is, however, one of the *Polaroid* factors to be analyzed.

---

**7.** *See* n. 4, *supra.*

**8.** The current model of the "Cuisi Cart" has a recommended retail list price of $368. Cuisi-

nart food processors range in price from $100 to $400.

Plaintiffs do not dispute that Boos has received no reports indicating consumer confusion as to the producer of the "Cuisi Cart." Boos's argument that appreciable confusion therefore does not exist, however, is unconvincing because of Boos's lack of direct contact with the ultimate consumers. Cuisinarts, on the other hand, has presented evidence suggesting that actual confusion exists. First, it has submitted as exhibits retailer advertising that fails to clearly distinguish between the two manufacturers.[9] Second, it has presented testimony that Cuisinarts has received inquiries concerning the "Cuisi Cart" through its toll-free consumer line. Although the number of recorded inquiries is small, the court infers from the nature of the source (a telephone "hot line") that the number of consumers who actually have been confused may be considerably larger.

### F. Defendant's Bad Faith

There is no direct evidence that Boos adopted its mark with the intent of benefitting from Cuisinarts's reputation and good will. For example, it is uncontested that Boos did not submit or approve the artwork used in retailer advertising that paired the "Cuisi Cart" with a Cuisinart food processor. Some circumstantial evidence that Boos may have sought to benefit from confusion exists, however. The similarity of the marks has already been noted, as has the absence of any reference to John Boos & Co. on the "Cuisi Cart" itself. Further, Boos concedes that it was aware of the Cuisinart food processor line prior to the time it adopted the "Cuisi Cart" mark and that by September, 1981, it was aware of at least two of Cuisinarts's trademark registrations.

Boos attempts to rebut this circumstantial evidence by testimony (1) that the product was referred to in conversation as the "Q–Z cart," and (2) that lack of space pre-cluded branding of "by John Boos & Co." on the cart itself. The court finds not credible the suggestion that Boos believed its pronunciation of "Cuisi Cart" would control retailers' and consumers' pronunciations and thus preclude any confusion with Cuisinarts's products.[10] It is not persuaded by the argument that lack of space on the cart was a problem, since apparently no attempt is made to brand the designation of other carts in Boos's product line, e.g., "Townhouse Table", "Chef's Cupboard Cart," "Americana Work Bar," and "Party Cart," on the products themselves.

The court thus concludes that intent to capitalize on Cuisinarts's reputation may have played a role in Boos's use of the term "Cuisi Cart."

### G. Sophistication of the Buyers and Quality of Products

Since the evidence is that both Boos's "Cuisi Cart" and the primary products of Cuisinarts are high-quality products with price tags in the hundreds of dollars,[11] there is no obvious disparity in quality such as would lead a sophisticated buyer to question that the source of the "Cuisi Cart" is Cuisinarts. Even were the presumably relatively sophisticated buyer of a "Cuisi Cart" to examine it carefully, he or she would find no help in the way of a brand, hang-tag, or other label. It would take a sophisticated and meticulous buyer indeed to closely examine the shipping boxes and infer [12] that Cuisinarts had neither produced, licensed, nor approved the "Cuisi Cart."

Taken together, these findings and conclusions lead the court to conclude that plaintiff has established the requisite "likelihood that an appreciable number of ordinarily prudent consumers [will] be misled." Plaintiff, however, has failed to demonstrate the intent to trade on Cuisinarts's

---

9. See plaintiff's ex. 9 (Spiegel catalog).

10. See p. 5, supra.

11. See n. 8, supra. Cuisinarts cookware sets sell for $150 to $400 a set.

12. Such a conclusion would require an inference. There is no indication that the shipping box or any insert disavows any association with Cuisinarts.

good will necessary to justify an award of attorneys' fees.

## II. *Laches*

■ In addition to its claim of non-infringement, Boos defends this action by urging the court to apply the doctrine of laches.

"The existence of laches is a question primarily addressed to the discretion of the trial court." *Public Administrator v. Angela Compania Naviera, S.A.*, 592 F.2d 58, 63 (2d Cir.), *cert. dismissed*, 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979) quoting *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 534, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956). In cases where the owner of a trademark seeks to enjoin use on non-competing goods of a mark which may cause confusion over their source, the court must "weigh the opposed interests in the scales of conscience and fair dealing." *Polaroid Corporation v. Polarad Electronics Corp.*, *supra*, 287 F.2d at 497 (laches properly found where plaintiff failed to sue until 1956, though it first learned of defendant's actions in 1945 and, by 1951, was aware of large sales by defendant). Laches is less likely to be found, however, where the non-competing goods are closely related to plaintiff's products. *See generally id.* The critical question is whether the defendant can show that it has been unfairly prejudiced by an unreasonable failure of the plaintiff to assert its rights. *See Lottie Joplin Thomas Trust v. Crown Publishers*, 592 F.2d 651, 655 (2d Cir.1978) (copyright); *cf. De Silvio v. Prudential Lines, Inc.*, 541 F.Supp. 625 (S.D.N.Y.1982) (admiralty).

In this case, Boos has not shown that Cuisinarts unreasonably failed to assert its rights in a manner which unfairly prejudiced the defendant. Cuisinarts contacted Boos promptly when it first learned of Boos's use of the mark "Cuisi Cart." It promptly notified Boos of its rejection of a proposed name change to "Cuisine Cart." While it is true that Cuisinarts did not contact Boos in 1982 and 1983, Cuisinarts has presented testimony that it was not aware that Boos continued to produce the "Cuisi Cart" during those years. Boos has been unable to produce any evidence of knowledge other than the fact that Boos exhibited at the 1982 and 1983 National Housewares Show in Chicago. Cuisinarts attended those fairs but specifically denies learning of the continued production and sale of the "Cuisi Cart."

Under the circumstances, where there is little evidence of actual knowledge of the continued production, where plaintiff made known its objections in 1981, and where defendant's failure to respond to plaintiff's letter of December, 1981, was at least partially responsible for the delay in filing suit, the court concludes that it would be inequitable to make a finding of laches.

## Conclusion

For the foregoing reasons, judgment shall be for the plaintiff. Defendant's counterclaim is dismissed with prejudice.[13] Submit judgment.

So Ordered.

---

**13.** Defendant's pre-trial memorandum of law requests the court, as part of its ruling on defendant's counterclaim, to enjoin plaintiff from asserting that "Cuisine Cart" is within the scope of its registrations. This question of use of the term "Cuisine Cart" was not fairly raised by Defendant's counterclaim; no evidence with respect to use of that term was presented at trial. The court therefore declines to consider the issue.