Hearing:
January 21, 1988
Paper No. 21
CV

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

In re The Shoe Works, Inc.

———

Serial No. 587,905

———

Emch, Schaffer, Schaub & Porcello Co., L.P.A. for The Shoe Works, Inc.

Craig Morris, Trademark Examining Attorney,
Law Office 5 (Paul E. Fahrenkopf, Managing Attorney)

———

Before Rice, Rooney and Simms, Members.

Opinion by Rooney, Member:

———

Pix of America, Inc.[1] filed an application to register the mark shown below for women's shoes, alleging a first use of January 1, 1982.



———

[1] By change of name and merger The Shoe Works, Inc.

Serial No. 587,905

Applicant was advised of an earlier-filed copending application for the mark PALM BAY for men's, women's and children's shorts and pants[2] which the Examining Attorney intended to cite against applicant's mark upon its registration. In response, applicant submitted a consent agreement entered by applicant and Troutman Industries, owner of application Serial No. 563,145, in which Troutman agrees to the use and registration by applicant of the mark for which it seeks registration. The Examining Attorney considered the consent agreement inadequate to overcome the likelihood of confusion between the involved marks and, since the copending application had matured into a registration, cited the registration[3] as a bar to applicant's mark. In response, applicant requested that its identification of goods be amended to read: "women's shoes sold solely through applicant's retail shoe store outlets"[4] and argued that there is no hard and fast rule regarding the likelihood of confusion in cases involving items of wearing apparel; that the goods in this case are different and are sold through different channels of trade

---

[2] Ser. No. 563,145, filed October 15, 1985 by Troutman Industries, Inc. alleging a first use of September 18, 1985.

[3] Regn. No. 1,405,904 issued August 19, 1986.

[4] Although the Examining Attorney noted the amendment and later referred to applicant's identification of goods in the amended form, it appears that the amendment was not entered. Accordingly, the amendment is hereby approved and entered.

2

and that the similarity in the marks is diminished by the design feature which forms a part of applicant's mark. Applicant also submitted its corporate secretary's affidavit stating that he is not aware of any actual confusion and has not been advised by registrant that it is aware of any actual confusion between the marks. In light of the foregoing facts, applicant requested that the Examining Attorney afford considerable weight to the detailed consent agreement entered by the parties. The Examining Attorney was not persuaded to revise her determination and the refusal to register was made final. The case is now before the Board for consideration of applicant's appeal.

The Examining Attorney argues that the marks both consist of the words PALM BAY, which are asserted to be the dominant portion, and that the border surrounding applicant's mark does not create a separate commercial impression while the palm tree design merely reinforces the word portion of the mark. Citing Mushroom Makers, Inc. v. R. G. Barry Corp., 580 F.2d 44, 199 USPQ 65 (2d Cir. 1978), cert. denied, 200 USPQ 832 (1979) and In re United States Rubber Co., 155 USPQ 595 (TTAB 1967), the Examining Attorney contends that the goods involved here, i.e., shoes on the one hand and shorts and pants on the other, are related. The restriction set forth in applicant's identification of goods is discounted because it is believed by

3

Serial No. 587,905

the Examining Attorney that registrant's goods, being unrestricted, are presumed to travel in all of the normal trade channels for such goods and the ultimate consumers of both applicant's and registrant's goods are the same. As to the consent agreement, the Examining Attorney urges that we look not only to the provisions of the agreement but the circumstances surrounding its drafting to assess the weight to be afforded. Since the registrant is not the prior user, the Examining Attorney feels that little weight should be given to the consent since registrant could only gain from signing it and thus avoid the risk of a cancellation proceeding.

Although there was a period of time when it seemed that there was a per se rule that use of the same or a similar mark on different items of wearing apparel was likely to cause confusion, later decisions emphasize that each case is to be determined on its own particular facts and circumstances. See In re British Bulldog, Ltd., 224 USPQ 854 (TTAB 1984) and cases cited therein.

The marks in this case are quite similar although by no means identical. Applicant's mark contains design features which tend to make it visually dissimilar from registrant's.

The goods are of the type which have been found to be related in past decisions and we consider them to be

4

complementary items of wearing apparel. All things being otherwise equal, we might well find likelihood of confusion in this situation. However, in considering "all of the facts and circumstances" we must examine the effect to be given the consent agreement, the affidavit and the amendment to the identification of applicant's goods.

By its amendment, applicant has restricted the channels of trade for its goods to its own retail shoe store outlets. To the Examining Attorney's statement that such a restriction is insufficient to avoid the likelihood of confusion because registrant's goods, being unrestricted, will travel in all of the normal trade channels for such goods, applicant responds that the normal trade channel for registrant's goods, i.e. men's, women's and children's shorts and pants, is not through retail shoe stores. We agree with applicant in this case that the restriction of its channels of trade will tend to avoid likelihood of confusion. The Examining Attorney's comparison of this case to the facts in In re Gena Laboratories, Inc., 230 USPQ 382 (TTAB 1985) is misplaced. In Gena the Board said that "(E)ven with both sets of goods restricted as to channels of distribution, it is clear that the ultimate consumers would be the same, namely, people needing cream to alleviate various problems with their feet." That case dealt with virtually identical marks PEDICARE and

PEDI CARE used on, essentially, foot cream. In this case we have specifically different goods and applicant's restricted trade channels are not the normal channels in which registrant's goods would be found.

As to the consent agreement, registrant has agreed to the use and registration by applicant of its mark on women's shoes. Both parties agree that there has been no actual confusion; that their goods are different and unrelated and their trade channels are different and distinct; that they will remain clear of each other's marketing and trade channels; that both parties will use their marks only on their identified goods; and that both will take whatever steps are necessary to avoid and preclude confusion, mistake or deception.

Applicant's affidavit reiterates the absence of actual confusion and that registrant has not indicated to applicant its knowledge of any actual confusion.

We agree with the Examining Attorney that a consent agreement is but one factor to be considered. But, in this case, it is our opinion that the agreement, which is quite explicit in its terms, is entitled to considerable weight. Add to that the absence of any actual confusion (note that the parties stated that both agree that there has been no actual confusion so that we are not faced with the usual dilemma in ex parte cases of silence on the part of the registrant).

Serial No. 587,905

Finally, there is a specific restriction in trade channels both in applicant's identification of goods and in the agreement. It would be difficult to find a fact situation wherein a consent agreement would be more likely to tip the scales in favor of registration. Nor do we believe that the registrant's motives in signing the agreement are necessarily suspect because it is the junior user. It might be better to ask why the senior user would seek a consent agreement if it believed that confusion would be likely to occur. It would be cleaner to seek cancellation in that case. If the senior user does not see any likelihood of confusion, is it reasonable to presume that the junior user does not share that view?

In view of the foregoing, the refusal to register is reversed.

J. E. Rice

L. E. Rooney

R. L. Simms
Members, Trademark
Trial and Appeal Board

MAR 10 1988

7