14-4484
*Opal Financial Group, Inc. v. Opalesque, Ltd. and Matthias Knab*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of December, two thousand fifteen.

PRESENT:  ROBERT D. SACK,
          RICHARD C. WESLEY,
          DEBRA ANN LIVINGSTON,
               *Circuit Judges.*

———————————

OPAL FINANCIAL GROUP, INC.,

               *Plaintiff-Counter-Defendant-Appellant,*

     -v.-                              14-4484

OPALESQUE, LTD. AND MATTHIAS
KNAB,

               *Defendants-Counter-Claimants-Appellees.*

———————————

1

FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT:

> MICHAEL CULVER, Millen, White, Zelano & Branigan, P.C., Arlington, VA.

FOR DEFENDANTS-COUNTER-CLAIMANTS-APPELLEES:

> ERIC VAUGHN-FLAM, Vaughn-Flam & Associates, Westport, CT.

Appeal from the United States District Court for the District of Connecticut (Charles S. Haight, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED AND DECREED** that the judgment of the District Court is

AFFIRMED.

Opal Financial Group, Inc. ("OFG") appeals from a judgment entered after a three-day bench trial on an action brought for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and unfair competition under Connecticut common law. Before the District Court, OFG sought injunctive and monetary relief from Opalesque, Ltd. ("Opalesque") and Matthias Knab ("Knab"), who denied any liability to the Plaintiff and asserted a counterclaim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, *et seq.*

OFG brought its trademark infringement claim pursuant to the Lanham

Trademark Act, whose principal provisions are found in § 32(1), 15 U.S.C.

§ 1114(1), and § 43(a), 15 U.S.C. § 1125(a).   In our Circuit, a claim of trademark

infringement "is analyzed under the familiar two-prong test," which "looks first

to whether the plaintiff's mark is entitled to protection, and second to whether

defendant's use of the mark is likely to cause consumers confusion as to the

origin or sponsorship of the defendant's goods."  *Virgin Enters. Ltd. v. Nawab*, 335

F.3d 141, 146 (2d Cir. 2003) (citations omitted).

"[T]he crucial issue in an action for trademark infringement or unfair

competition is whether there is any likelihood that an appreciable number of

ordinarily prudent purchasers are likely to be misled, or indeed simply confused,

as to the source of the goods in question."  *Mushroom Makers, Inc. v. R. G. Barry*

*Corp.*, 580 F.2d 44, 47 (2d Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 1116 (1979).

In evaluating whether a trademark owner claiming infringement has satisfied its

burden of showing a likelihood of consumer confusion, courts in this Circuit

routinely apply the non-exclusive multi-factor analysis developed by Judge

Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961).

*See Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995).  These

factors include the following: (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers. *See, e.g.*, *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (listing the *Polaroid* factors).[1]

OFG first argues that the District Court erred in its treatment of OFG's admission within its summary judgment papers that it had never offered professional continuing education credits in connection with its conferences. The District Court deemed that admission binding at trial, notwithstanding conflicting testimony from OFG's CEO. In OFG's view, that was erroneous under Federal Rule of Civil Procedure 56(g). We need not and do not decide this issue because any such error would have been harmless. Insofar as OFG argues that the District Court's alleged error as to the availability of professional credit

---

[1] "In the trademark context, we review the district court's determinations as to each separate factor in *Polaroid*'s multifactor test for clear error, while the court's ultimate balancing of those factors is a matter of law subject to *de novo* review." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) (citations omitted). "[W]hether conducting review *de novo* or under a less sweeping standard, we 'must disregard all errors and defects that do not affect any party's substantial rights.'" *Lore v. City of Syracuse*, 670 F.3d 127, 150 (2d Cir. 2012) (quoting Fed. R. Civ. P. 61). "A substantial right is not implicated if there is no likelihood that the error or defect affected the outcome of the case." *Id.* We assume the parties' familiarity with the facts and record below, which we reference only as necessary to explain our decision.

4

at OFG's conferences was material, it argues that the error led the District Court incorrectly to find that OFG's products were not proximate to Opalesque's. But as we next conclude in analyzing OFG's argument that the District Court erred in its *Polaroid* analysis, the record supports the District Court's finding of minimal proximity between the products regardless of whether OFG's conferences offered professional credits.

OFG argues that the District Court clearly erred in its separate determinations regarding each of the eight *Polaroid* factors, particularly "the proximity of services and marks and the evidence of actual confusion as embodied in the survey results." Appellant's Br. 16. On the issue of proximity, the District Court found that the parties offered different services solely because OFG's "principal service" was "organizing and producing networking conferences of several days' duration at resorts," whereas Opalesque's "principal services" were "online newsletters and brief online webinars sans networking." Special App'x 44–45 (emphasis omitted). In our view, the District Court placed too much emphasis on that fact. It is true that the parties' principal services differ, and that Opalesque's allegedly infringing educational events amounted to a small, short-lived business. But, although the proportion of a defendant's

product line that allegedly infringes the plaintiff's products may be relevant to a court's proximity analysis, *see, e.g.*, *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir. 1993), the fact that Opalesque's allegedly infringing products are not its "principal service" cannot, on its own, establish a lack of proximity. To the extent that the District Court's decision suggests otherwise, we disagree.

Nevertheless, additional evidence in the record supports the District Court's conclusion that the parties' products differed substantially. Regarding the Global Alpha Forum—the allegedly infringing product that most closely resembled OFG's conferences—the District Court found (not erroneously) that Opalesque served as a media partner rather than a conference producer, which distinguishes its service from OFG's.[2] As for the Yale Club workshops and

---

[2] OFG argues that regardless of what Opalesque ultimately did at the conference, it presented itself as a conference organizer in the event's brochure. In OFG's view, the District Court's proximity analysis, which focused largely on what Opalesque objectively did at the conference, improperly dismissed the effect of this brochure on the consumer population. It is true that how a party sells its product—not simply the objective nature of that product—is indeed relevant when assessing the likelihood of confusion in general, and the proximity of products in particular. Here, however, the record supports the determination that the brochure would not lead consumers to believe Opalesque was organizing the conference. The District Court emphasized the fact that "[t]he brochure itself reflects [the] reality [that Opalesque was just a media sponsor]. Immediately following the 'Hosted By' heading and the two logos, the brochure readers were instructed: 'For questions or to register by phone, please call the Connecticut Hedge Fund Association . . . .'" Special App'x 30. Given the District Court's non-erroneous finding that consumers of these conferences were highly sophisticated and understood the distinction between organizers and media partners, it

6

webinars, those events differed from OFG's conferences in several significant respects, regardless of whether OFG offered professional continuing education credits. The workshops and webinars had notably shorter durations and smaller sizes, took place at non-resort locations, and lacked sponsors and media partners. In light of these distinctions, we conclude that the District Court's finding of minimal proximity between the parties' products was not clearly erroneous.

We also conclude that the District Court's separate determinations regarding the remaining *Polaroid* factors were not clearly erroneous. OFG does not dispute the court's basic findings regarding three of the factors—the strength of the plaintiff's mark, the similarity of the two marks, and the quality of defendants' products—and we conclude that those findings were not clearly erroneous.[3] OFG does, however, contest the court's findings that the final four

---

was not clear error for the District Court to determine, even in light of the brochure, that the Defendants acted as a media partner for the Global Alpha Conference and were likely perceived as such.

[3]    OFG argues that the District Court clearly erred in "not finding (indeed, not even discussing) that OFG had established a common law mark in the word OPAL." Appellant's Br. 16. We find that this silence, insofar as it was error, did not affect the outcome of the case. Recognition of the mark "Opal" would have been relevant to only two of the *Polaroid* factors: the strength of the mark and the similarity of the two marks. But both of those factors already favored OFG in the District Court's analysis: The court found that OFG could "justly proclaim the strength of its mark," Special App'x 46 (emphasis omitted), and that the similarity of its mark to the defendants' mark was "certainly apparent," *id.* at 47. Consideration of the mark "Opal" might have further bolstered those conclusions, but it would not have substantively altered the court's

factors—consumer sophistication, actual confusion, the plaintiff's likelihood of bridging the gap, and the defendant's good faith—favored the Defendants. In our view, none of those findings was clearly erroneous, either. Evidence in the record suggests that the consumers in question were indeed sophisticated, and OFG offered little evidence that consumers were actually confused,[4] that it

*Polaroid* analysis in OFG's favor. Any error by the District Court on this issue, therefore, was not prejudicial.

[4] OFG argues as to actual confusion that the District Court misinterpreted OFG's examination of the expert who prepared the survey, an error that, in concert with others, rendered the District Court's ultimate determination that OFG had not presented sufficient evidence of actual confusion clearly erroneous. We disagree that this ultimate determination was clear error. The District Court stated that "counsel's examination got [the expert] to acknowledge that his calculations did not include, as a form of brand confusion, the answer made by 3.9% of the respondents that Opal Financial Group and Opalesque are 'one and the same company.'" Special App'x 40. In fact, the record makes clear that counsel for OFG solicited from the expert an acknowledgement that the expert's calculations had failed to include the answer made by 13.7% of the respondents that OFG and Opalesque "are jointly owned by a larger company." Joint App'x 183, 765.

OFG is right that the District Court erred in this respect, and that there is an important distinction between 3.9% and 17.6% (*i.e.*, the actual total number of respondents who showed some confusion on the survey, properly understood). Nevertheless, it is not right that the District Court's ultimate conclusion—that "it cannot be said that this market research survey furnishes evidence of actual confusion"—was erroneous. Special App'x 40. As an initial matter, the 17.6% figure carries a margin of error of plus or minus 10 percentage points, Joint App'x 758, which supports the District Court's ultimate decision to accord little or no weight to its findings. *See Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 n.6 (1st Cir. 2006) (concluding that an expert report's "small sample size and large margin of error combined to cast considerable doubt on its statistical integrity"); *Alltel Corp. v. Actel Integrated Commc'ns, Inc.*, 42 F. Supp. 2d 1265, 1269, 1273 (S.D. Ala. 1999) (holding that an expert report was of "little evidentiary value" because "[t]he sample was too small" and "the margin of error" of "plus or minus 14%" was "too large"); *Pebble Beach Co. v.*

8

planned to bridge the gap and compete with Opalesque's distinct types of educational events, or that Opalesque either adopted or used its mark in bad faith.

OFG argues further that the District Court improperly balanced its determinations regarding each *Polaroid* factor to conclude that there was no likelihood of confusion. We disagree. The District Court did accord special weight to actual confusion, the proximity of the products, and consumer sophistication, but it also considered the remaining factors. That approach was sound in the circumstances of this case, as was the court's ultimate conclusion that OFG "failed to sustain its burden of proving that a likelihood of consumer confusion exists with respect to the trademarks used by the parties." Special App'x 47–48. Although the trial may not have been perfectly executed in every respect, perfection is not the standard. The District Court's alleged errors do

---

*Laub Am. Corp.*, No. C-84-20125 (RPA) (SJ), 1985 WL 5584, at *22 (N.D. Cal. Dec. 27, 1985) ("A seven percent (7%) margin of error as against a 7.8% response rate leaves virtually nothing on which the court could rely to find likelihood of confusion.").

Even putting aside this and various other flaws in the survey, the survey stated in its executive summary that "[t]op-of-mind awareness of Opal Financial Group and Opalesque is extremely low" and thus "[i]t is impossible to conclude that brand confusion exists where awareness is extremely low." Joint App'x 759. Opalesque's counsel highlighted this point in his cross examination. Joint App'x 188. The expert never disclaimed this finding on the stand. As such, neither the survey nor any appreciable additional evidence presented at trial by OFG rendered the District Court's ultimate conclusion as to actual confusion clearly erroneous.

9

not—either separately or collectively—cast any serious doubt on its ultimate holding. Rather than claiming that the District Court erroneously ignored or misinterpreted its evidence, most of OFG's arguments on appeal challenge the admission or probative value of Opalesque's evidence—but OFG instigated the lawsuit and had the burden of proving its claim. None of the alleged errors overcomes the fact that OFG simply failed to provide sufficient evidence to show that "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers*, 580 F.2d at 47.

We have considered all of OFG's remaining arguments and find them to be without merit. For the foregoing reasons, we AFFIRM the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk